**Opinion filed November 30, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00209-CV

_____

## PAULA MORRIS, Appellant

## V.

## CITY OF MIDLAND, TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV57069**

## M E M O R A N D U M   O P I N I O N

Appellant, Paula Morris, appeals the trial court's grant of summary judgment in favor of the City of Midland (the City) and the trial court's final judgment for a permanent injunction against Morris because of her repeated violations of certain municipal ordinances. Morris contends on appeal that: (1) the trial court abused its discretion when it denied Morris's request for court-appointed counsel; (2) the trial court erred when it considered the City's requests for summary judgment and a permanent injunction without a record being made of the proceedings; (3) the

permanent injunction ordered by the trial court was "unconstitutionally vague" and violated Rule 683 of the Texas Rules of Civil Procedure; (4) the trial court abused its discretion when it granted permanent injunctive relief because the City did not make a showing of irreparable injury and the lack of an adequate remedy at law; (5) the trial court's grant of the City's motion for summary judgment was improper because the nuisance ordinance is invalid, issues of material fact exist, and the trial court did not view the facts in a light most favorable to Morris; and (6) the trial court's contempt findings were illegal, violated due process, and the fines imposed exceeded the per incident cap. We affirm.

## I. *Factual Background*

This case originates from Morris's use of residential property in violation of multiple City of Midland Municipal Code provisions. Beginning on July 18, 2011, the City took numerous photographs documenting the accumulation of debris and other city ordinance violations occurring on properties owned by Morris. Ordinance violations were documented through September 2020. The City filed actions against Morris in municipal court and Morris was found guilty of ten independent violations of city ordinances between August 23, 2012 and July 12, 2019. The violations for which she was found guilty included accumulations of debris and parking a trailer or recreational vehicle in a residential area. Numerous garage sales also occurred on the property from 2012 through 2020, in excess of the number permitted by city ordinance.[1] As a consequence of her ongoing violations of the city ordinances, the municipal court fined Morris. Morris did not pay all of the fines, and the City sent her multiple letters requesting payment.

Because of Morris's repeated violations of City ordinances, the City filed its original petition against Morris in this case on September 28, 2020, seeking a

---

[1] These facts are established by deemed admissions. *See* TEX. R. CIV. P. 198.2(c).

2

temporary injunction, a permanent injunction, and civil penalties under Sections 54.017 and 211.012(c) of the Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. § 54.017 (West 2021), § 211.012(c) (West 2016). Morris filed a pro se answer on October 23, 2020.[2] The trial court set a hearing on the City's request for a temporary injunction for November 20, 2020. On the day of the temporary injunction hearing, Morris filed a motion for continuance. The City objected to Morris's request for a continuance and expressed concerns regarding Morris's history of requesting continuances in previous cases. Despite the City's arguments, the trial court granted the continuance and reset the hearing for December 10, 2020. The hearing was again reset for December 18, 2020. On December 22, 2020, the trial court granted the City's request for a temporary injunction against Morris and set a trial on the merits for February 23, 2021.

On January 13, 2021, the City filed a motion to show cause against Morris; the motion was based on her alleged violations of the temporary injunction. The underlying basis of the motion concerned Morris's alleged ongoing violations of the Midland Municipal Code, which the temporary injunction enjoined her from violating. After several resets, the trial court set the show-cause hearing for February 23, 2021. On February 22, Morris again filed a motion for continuance due to complications associated with an ice storm, which the trial court granted.

On the same day that she filed her motion for continuance, Morris filed a motion for a court-appointed attorney. Morris re-urged this motion on March 5, 2021. The trial court denied the motion on March 12. On the same day, the trial court held a hearing on the City's motion to show cause and signed its first order

---

[2]Although Morris is not pro se on appeal, we note that we hold pro se litigants to the same standards as licensed attorneys and require them to be familiar with and comply with all applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.).

finding Morris in contempt for violating the temporary injunction. Morris was fined $500, which she paid on March 26, 2021. On March 12, Morris filed a "motion for permission to file an amicus brief," which included an affidavit by an acquaintance of Morris who commented about Morris's health and general well-being.

After Morris requested a jury trial and paid the jury fee, the trial court scheduled the case for a jury trial on August 2, 2021. Morris then filed another motion for continuance on July 16, 2021, claiming that she could not participate in the trial because of a head injury she had sustained in an automobile accident, and related mental health issues. The trial court granted the continuance and reset the trial for November 1, 2021. On October 6, 2021, Morris filed another continuance because of a claimed family emergency. The trial court, again, granted the continuance and reset the trial for March 14, 2022. On March 3, 2022, Morris filed yet another motion for a continuance, alleging that she was suffering from complications from a new head injury, various illnesses, and other health ailments—the City opposed this motion and the trial court denied it. Morris did not appear at trial on March 14, 2022, because she was allegedly hospitalized. Therefore, the trial court reset the trial for July 11, 2022.

On March 16, 2022, the City filed its second motion to show cause due to Morris's failure to comply with the temporary injunction; the trial court set this motion for a hearing for March 21, 2022. Subsequently, the trial court signed its second order on April 1, 2022, finding Morris in contempt. On April 29, Morris filed a motion for leave to file a motion for a new show-cause hearing; she again requested a court-appointed attorney. In support of her request for a court-appointed attorney, Morris alleged, as she had before, that she suffered from mental health issues and numerous head injuries. Morris filed a second motion for leave and for a court-appointed attorney on May 31, 2022, citing again to her various illnesses to support her argument.

4

On May 16, 2022, the City filed a motion for summary judgment and a third motion to show cause. The trial court set a hearing on these motions for June 23, 2022. Morris did not appear. On July 24, 2022, the trial court signed an order granting the City's motion for summary judgment and later signed a final judgment for a permanent injunction against Morris on June 28, 2022. On July 6, 2022, Morris filed a motion to set aside the final judgment claiming that she was out of town on "family business" when these motions were presented to the trial court.

Morris filed a notice of appeal on July 22, 2022. Morris later filed a request for a court-appointed attorney for purposes of appeal on September 28, 2022. On November 29, 2022, the City filed a fourth motion to show cause, and on December 16, 2022, the trial court signed its third order finding Morris in contempt.

## II. *Standards of Review*

We review the trial court's decision whether to appoint counsel for an abuse of discretion. *Gibson v. Tolbert*, 102 S.W.3d 710, 712 (Tex. 2003). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

The grant or refusal of either a permanent or temporary injunction is ordinarily within the sound discretion of the trial court; and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Walter v. Walter*, 127 S.W.3d 396, 398 (Tex. App.—Dallas 2004, no pet.). "But when the trial court issues a permanent injunction in response to a party's motion for summary judgment, our review is governed by the summary judgment standards of review." *See Reed v. Lake Country Prop. Owners Ass'n, Inc.*, No. 02-14-00282-CV, 2016 WL 3655589, at *2 (Tex. App.—Fort Worth July 7,

2016, no pet.) (mem. op); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

We review a trial court's grant of summary judgment de novo. *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a), (c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant establishes its summary judgment burden, the burden shifts to the nonmovant to present evidence that raises a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215.

### III. *Analysis*

Morris raises seven issues on appeal: (1) the trial court abused its discretion when it denied Morris's request for court-appointed counsel because "exceptional circumstances" existed and because confinement was a possible punishment option for any contempt finding; (2) the trial court erred when it permitted the summary judgment and permanent injunction hearings to proceed without a record of the hearings being made; (3) the trial court's permanent injunction is "unconstitutionally vague" and violates Rule 683 of the Texas Rules of Civil Procedure; (4) the trial court erred when it granted the permanent injunction because the City did not make

a showing of irreparable injury and the lack of an adequate remedy at law; (5) the trial court erred when it granted the City's motion for summary judgment because the nuisance ordinance is invalid and issues of material fact exist; (6) the trial court's grant of summary judgment was improper because the trial court did not view the facts in a light most favorable to Morris; and (7) the trial court's contempt findings are illegal, violate Morris's rights to due process, and the fines imposed exceed the per incident cap.

We note at the outset that some of Morris's complaints are raised for the first time on appeal. To preserve a complaint for appellate review, the complaining party must first raise the complaint before the trial court. TEX. R. APP. P. 33.1.

A. *Validity of Municipal Ordinance*

One such argument is her fifth issue, wherein Morris contends that Section 8-7-3—the nuisance ordinance—of the Midland Municipal Code is invalid. Within this issue, she argues that, because this ordinance is invalid, genuine issues of material fact exist, and the trial court therefore erred when it granted the City's motion for summary judgment.

Statutes enacted by the legislature are presumed to be constitutional; therefore, any challenges to this presumption should generally be raised as an affirmative defense to the enforcement of the statute. *In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000); *see Powell v. City of Houston*, 628 S.W.3d 838, 842 (Tex. 2021) (noting that courts construe municipal ordinances in the same manner they construe statutes and that municipal ordinances are "presumed to be valid.") (quoting *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982)). The record does not show that Morris presented any arguments, objections, or other complaints to the trial court concerning the validity of Section 8-7-3 of the Midland Municipal Code. As such, the trial court did not have the opportunity to rule on, or refuse to rule on, the constitutionality or validity of this ordinance or other provisions in the

7

permanent-injunction order that Morris now challenges on appeal. Thus, Morris failed to preserve these complaints for our review. *See* TEX. R. APP. P. 33.1(a). Further, because these complaints were not preserved, we need not address Morris's contention that genuine issues of material fact exist regarding the ordinance's validity. *See id.*; TEX. R. APP. P. 47.1.

Accordingly, Morris's fifth issue is overruled.

## B. *Appointment of Counsel*

In her first issue, Morris argues that the trial court abused its discretion when it denied her request for court-appointed counsel because Morris did not have the financial ability to retain counsel to represent her interests in the case or because "exceptional circumstances" existed to support her request for the appointment of counsel.

Generally, a civil litigant is not entitled to court-appointed counsel absent a legislative mandate. *In re State*, 556 S.W.3d 821, 827 (Tex. 2018) (citing *Gibson v. Tolbert*, 102 S.W.3d 710, 712 (Tex. 2003)). A trial court *may* appoint counsel for an indigent party in a civil case in "exceptional" instances in which the circumstances are such that the proper administration of justice may be best served by the appointment of counsel. *See* TEX. GOV'T CODE ANN. § 24.016 (West 2023); *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996). However, the appointment of counsel is not required when the record does not contain, at a minimum, an affidavit regarding the requesting party's financial inability to employ counsel and there is no finding or determination by the trial court of the requesting party's indigency. *Thomas v. Anderson*, 861 S.W.2d 58, 60 (Tex. App.—El Paso 1993, no writ).

Morris filed a motion for a continuance on November 20, 2020. In this motion, Morris stated in an unsworn affidavit that she "[spoke] with an attorney and [was] making arrangements to retain him." On April 29, 2022, Morris filed a motion

requesting court-appointed counsel and stated that she had contacted at least thirty attorneys in the previous months concerning possible representation in this case; however, none of the attorneys were "willing" to represent her or litigate against the City. Morris filed several motions requesting a court-appointed attorney but each time she failed to explain her financial inability to employ counsel or include any affidavit of indigency with her request. Further, there is no trial court finding or determination in the record concerning Morris's alleged indigency. As such, the trial court did not abuse its discretion when it denied Morris's requests for court-appointed counsel on that basis. *See Thomas*, 861 S.W.2d at 60.

Additionally, Morris argues that the "prolonged nature of the case, [her] physical and mental health . . . , and the tragic personal losses [she] suffered" created an "exceptional circumstance," which required that the trial court appoint an attorney to represent her in this case. While Morris may have suffered from personal and health-related issues throughout the pendency of the case, the record does not support the conclusion that an "exceptional circumstance" existed to justify the appointment of counsel. The supreme court in *Gibson* noted that "[o]nly by evaluating the unique circumstances of a given civil case could a [trial] court ever determine that it has no reasonable alternative but to appoint counsel." *See Gibson*, 102 S.W.3d at 713. While this case was pending below, Morris filed numerous motions on her behalf, including several motions for continuance, many of which the trial court granted. The City, in opposing Morris's motions for continuance, presented the trial court with copies of motions filed by Morris from previous cases where she had appeared pro se and, as in this case, referenced various health and family issues in support of her continuance requests.

Although Morris cites to various life events and illnesses that allegedly befell her while this case was pending in the trial court below, we cannot say based on these alleged circumstances alone that the only *reasonable alternative* available to

the trial court was for it to appoint counsel for Morris. *Gibson*, 102 S.W.3d at 713. In fact, the trial court repeatedly accommodated Morris by granting her multiple continuances when she contended that circumstances prevented her from participating in the matters that the trial court had scheduled.

Moreover, Morris refers to her interest in her "physical and mental health" and her neighbor's interest in Morris's compliance with the Midland Municipal Code as reasons for why she should have been appointed counsel. However, we may not substitute our judgment for that of the trial court when reviewing matters committed to the trial court's discretion. *Walker*, 827 S.W.2d at 839–40. Therefore, we agree with the trial court's conclusion that the circumstances presented are not of such an "exceptional" character as to require the appointment of counsel. *Id.* Further, Morris has failed to demonstrate that the public and private interests at stake here are such that the appointment of counsel is required. *See Travelers Indem. Co. of Conn.*, 923 S.W.2d at 594. Accordingly, the trial court did not abuse its discretion when it denied Morris's request for court-appointed counsel.

Alternatively, Morris argues that the trial court was required to appoint counsel to represent her interests because contempt hearings carry a possible punishment of confinement. None of the trial court's show-cause orders, or any of its contempt orders, refer to or include a finding of confinement or criminal contempt. However, Morris points to the "criminal contempt" language used by the City in its various show-cause motions in support of her contention that confinement was a possibility.

The due process guarantee provided by the Fourteenth Amendment of the United States Constitution incorporates the Sixth Amendment's right to counsel and imposes a duty on the state to provide counsel to an indigent person who cannot afford a lawyer; however, this right to counsel is contingent on whether there is a deprivation of liberty that may result from a proceeding, not upon the

characterization of the proceeding as either "criminal" or "civil." *Ridgway v. Baker*, 720 F.2d 1409, 1413 (5th Cir. 1983). Further, the right to counsel is dependent on whether the person found in contempt was actually sentenced to a term of confinement. *Ex parte Hamill*, 718 S.W.2d 78, 79 (Tex. App.—Fort Worth 1986, no writ) (citing *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979)). Here, the trial court did not make a finding of criminal contempt, nor did it order Morris to serve or sentence Morris to any term of confinement. Therefore, Morris was not entitled to court-appointed counsel as she claims.

Accordingly, we overrule Morris's first issue.

C. *The Absence of a Hearing Record*

In her second issue, Morris contends that the trial court abused its discretion when it did not assure that a record of the summary judgment hearing was made. She further argues that she was harmed in formulating issues for appeal because of the absence of a summary-judgment-hearing record.

Rule 13.1 of the Texas Rules of Appellate Procedure requires that a court reporter must attend and make a record of all court proceedings "unless [doing so is] excused by agreement of the parties." TEX. R. APP. P. 13.1(a). The Government Code imposes similar obligations on an official court reporter to take full shorthand notes pursuant to the *request of the parties*. *See* GOV'T § 52.046(a) (West 2023). A reporter's record of a summary judgment hearing is generally unnecessary for appellate purposes because oral testimony may not be received at these hearings. TEX. R. CIV. P. 166a(c); *see FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022); *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 n.7 (Tex. 1993) (stating that the creation of a reporter's record at a summary judgment hearing is "a practice neither necessary nor appropriate to the purposes of such a hearing").

11

While the reporter's record from the summary judgment hearing in this case is incomplete, the clerk's record includes the City's motion for summary judgment and the evidence and exhibits submitted in support of the City's motion. Morris, who was pro se at the time of the summary judgment hearing, did not appear at the hearing, nor did she file a response to the City's motion. As such, the City's motion, and the evidence and exhibits it submitted with its motion, was uncontroverted. The City—who appeared at the summary judgment hearing through counsel—advised the trial court that they did not require a record of the hearing, which is within their right to waive a record of the hearing. Further, neither party requested full shorthand notes of the hearing.

Despite her contentions, Morris was not deprived of a proper record. The absence of a reporter's record did not prejudice Morris or prevent her from effectively pursuing this appeal because the clerk's record contains the only filings, information, and evidence—all of the motions, responses, affidavits, and exhibits—that the trial court could have considered in making its decision. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). Morris argues that the City's statement that they "don't need a record for this hearing other than [their] request that the Court take notice of its file," implicated Section 52.046(a) and required the court reporter to take full shorthand notes of the hearing; however, Morris does not point to any authority to support her contention. The City's statement to the trial court of its waiver of a hearing record, which we recognize is common in summary judgment practice, was not an affirmative request for a record of the hearing. Because the trial court was not required to assure that the court reporter made a record of the summary judgment hearing, Morris was not harmed by the lack of a reporter's record.

Accordingly, we overrule Morris's second issue.

12

D. *The Permanent Injunction*

In her third issue, Morris contends that the permanent injunction issued by the trial court (1) is unconstitutionally vague and (2) violates Rule 683 of Texas Rules of Civil Procedure. We first address Morris's constitutional challenge.

Morris argues in her brief "that all Midland Municipal Code sections cited in the injunction, except one, are unconstitutionally vague as listed in the injunction and makes the injunction void." Morris concedes that she "did not plead or prove general invalidity" of the ordinances "in other settings," and we note that Morris did not raise in the trial court the challenge, complaint, or objection to the constitutionality of the injunction that she now advances on appeal.

"As a prerequisite to presenting a complaint for appellate review, the record must show" that a complaint was made to the trial court by an objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). For the same reasons, even a constitutional claim cannot be raised for the first time on appeal. *Carrizales v. Tex. Dep't of Protective & Regul. Servs.*, 5 S.W.3d 922, 925 (Tex. App.—Austin 1999, pet. denied). Because Morris failed to raise in the trial court, the complaint or argument that she now asserts, that the provisions of the municipal code are unconstitutionally vague, we conclude that she has waived appellate review of this complaint. *See Livingston v. Livingston*, 537 S.W.3d 578, 598 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We now turn to Morris's Rule 683 argument.

There are three classifications of injunctions: (1) a restraining order that has been defined as an interlocutory order made a part of a motion for a preliminary injunction, by which a party is restrained pending a hearing on the motion for a temporary injunction; (2) an order issued after a temporary injunction hearing that is effective until the final hearing on the merits, unless dissolved by an interlocutory

order; and (3) a permanent injunction that can be dissolved only in a final decree or judgment. *Bolen v. Imperial Petroleum, Inc.*, No. 11-06-00018-CV, 2007 WL 2010991, at *2 (Tex. App.—Eastland July 12, 2007, pet. denied) (mem. op.). Morris claims that the permanent injunction she challenges does not comply with Rule 683. However, Morris is mistaken as to the scope of Rule 683. Rule 683 only applies to the effectiveness of temporary restraining orders and temporary injunctions; it does not apply to permanent injunctions. *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 892 (Tex. App.—Dallas 2004, pet. denied); *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.); *Carrell v. Richie*, 697 S.W.2d 43, 46 (Tex. App.—Austin 1985, writ ref'd n.r.e.); *Spinuzzi v. Town of Corinth*, 665 S.W.2d 530, 534 (Tex. App.—Fort Worth 1983, no writ); *Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 835 (Tex. App.—Galveston 1956, writ ref'd n.r.e.). Because Rule 683 is not applicable here, Morris's argument is without merit.[3]

In her brief, Morris contends that the specific sections of the Midland Municipal Code that are referred to in the trial court's final judgment and permanent injunction, render the judgment indefinite and unclear. The trial court's final judgment includes and refers to the sections of the Midland Municipal Code that Morris violated—Sections 11-1-4.03, 6-1-22, 8-6-18, and 8-7-3—and explains and specifies what Morris is enjoined from doing. *See* Midland, Tex., Code of Ordinances ch. 11-1, § 11-1-4.03 (2019) (Use Chart); ch. 6-1, § 6-1-22 (1998) (garage and estate sales); ch. 8-6, § 8-6-18 (2012) (accumulation of stagnant water, filth, weeds, brush, and debris on lots); ch. 8-7 § 8-7-3 (1983) (nuisance generally). The code sections cited by the trial court in its judgment have been cited, in part, in

---

[3]We do note, however, that the trial court's judgment for permanent injunction complies with the applicable rule, Rule 301 of the Texas Rules of Civil Procedure, and is definite, clear, and precise. *See* TEX. R. CIV. P. 301; *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956) (As a rule, "[a]n injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ.").

14

endnotes within the final judgment. Morris argues that the use of these "endnotes" in the final judgment make the judgment indefinite and unclear because some of the cited language in the endnotes "could easily be read as a list of *permitted* uses."

Contrary to Morris's contentions, we cannot say that the Midland Municipal Code sections that are recited within the final judgment render the trial court's permanent injunction void. The permanent injunction is clear, definite, and precise as to what actions Morris is enjoined from committing and clearly states that "Morris immediately cease and desist from violations of the Midland Municipal Code by way of using her property . . . for purposes other than those permitted for residential property per Midland Municipal Code § 11-1-4.03."

Section 11-1-4.03 directs the reader to the "Use Chart" within the City's Zoning Ordinance, which denotes what types of activities are permitted. *See* Attachment 1-Use Chart, https://ecode360.com/attachment/MI6651/MI6651-011-1a%20Use%20Chart.pdf (last visited on November 29, 2023). The trial court, in endnote (*i*), cites to relevant sections of nonpermitted uses which the City argued Morris violated—these nonpermitted uses are also located in the City's "Use Chart." As such, this language is not indefinite, unclear, or imprecise, as Morris suggests. We further conclude that the other code sections cited in the final judgment properly indicate the specific and relevant actions which Morris is enjoined from violating, and the trial court set forth proper reasons for granting the City's request for a permanent injunction.

Accordingly, we overrule Morris's third issue.

E. *The Grant of Summary Judgment on the Permanent Injunction*

In Morris's fourth issue, she contends that the City failed to show irreparable injury and a lack of an adequate remedy which are necessary to establish one's entitlement to a permanent injunction.

Section 211.012(c) of the Local Government Code grants authority to the City to pursue an injunction action against Morris to address her violations of its zoning ordinances. LOC. GOV'T § 211.012(c). Additionally, Sections 54.012 and 54.017 authorize a municipality, such as the City, to bring a civil action to enforce its ordinances and request civil penalties for the violations of its ordinances. *Id.* §§ 54.012, 54.017. Of the four Municipal Code Ordinances that Morris violated, only Section 11-1-4.03, regarding the permitted uses of property, is a zoning ordinance. However, Morris's continued violations of the other three sections of the Municipal Code—6-1-22 (garage sales), 8-6-18 (accumulation of debris), and 8-7-3 (nuisance)—are directly related to and further her actions in violating the City's zoning ordinance. Therefore, the trial court appropriately granted an injunction against Morris to enjoin her from continuing to violate these ordinances. *See id.* § 211.012(c)(1) ("If . . . land is used in violation of . . . an ordinance or regulation adopted under this subchapter, the appropriate municipal authority, in addition to other remedies, may institute appropriate action to . . . prevent the unlawful . . . use . . . restrain, correct, or abate the violation . . . [or] prevent any illegal act, conduct, business, or use on or about the premises.").

To obtain permanent injunctive relief, a party must show (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Chehab v. Huttenbach*, No. 11-20-00180-CV, 2022 WL 2165532, at *5 (Tex. App.—Eastland June 16, 2022, no pet.) (mem. op.); *Livingston*, 537 S.W.3d at 587 (citing *Risner v. Harris Cnty. Republican Party*, 444 S.W.3d 327, 339 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). As discussed below, the City's summary judgment evidence, which

16

is uncontroverted, conclusively establishes that the City is entitled to the permanent injunctive relief it requested.[4]

In Morris's sixth issue, she contends that, as the nonmovant, the trial court did not view the summary judgment evidence in the light most favorable to her. The City, in support of its motion for summary judgment, submitted, among other things, Morris's deemed admissions, Morris's previous Municipal Court convictions, and affidavits that discussed her numerous violations of Midland Municipal Code. For example, one of Morris's neighbors, Darrell Hawkins, stated in his affidavit that Morris had been holding about one garage sale per month, each lasting approximately five days. Hawkins further stated that "there has been traffic at or around [Morris's property] relating to the items in place in the front yard that severely inhibits and sometimes prevents other persons residing in the neighborhood from accessing their property, becoming an annoyance to the other persons who live near [Morris's property]." The City also attached photographs of Morris's property on various days where debris is visible on the property.

The City's summary judgment evidence further shows that Morris admitted that she had furniture, tires, a trailer, cardboard, tables, a television, blankets, plastic bins, a racecar bed, a grill, fencing, an umbrella table, a lawn mower, highchairs, toys, mattresses, and rugs in her yard at various times in 2020 and through 2021. Morris admitted that these items were available for purchase, and that she sold items from her home as a source of income. Morris further admitted that several neighbors complained about the items that she left in her front yard. Finally, Morris admitted that she held more than four garage sales each year from 2012 through 2020.

---

[4]Although the City argues that, to prevail on its request for injunctive relief, it is not required to show the existence of an irreparable injury and the absence of an adequate remedy at law, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002), we have nonetheless concluded that the City has in this case conclusively established the four elements that are necessary to obtain permanent injunctive relief.

The City's summary judgment evidence conclusively shows that Morris's behavior violated the Midland Municipal Code, as Morris was continuously (1) engaged in activities outside the permitted uses outlined in the code in violation of Section 11-1-4.03; (2) selling items from her home more than four times a year in violation of Section 6-1-22; (3) storing debris in her yard in violation of Section 8-6-18; and (4) conducting a business which occasions annoyance to the public or the inhabitants of the neighborhood in violation of Section 8-7-3. Further, this evidence conclusively supports the findings that were necessary for the trial court to grant a permanent injunction—that Morris's actions are harmful to her neighbors, that her actions would continue and cause imminent harm and irreparable injury to her neighbor's use and enjoyment of their property, and that the City's previous enforcement of the Midland Municipal Code against Morris did not effectively deter her harmful conduct. *See Livingston*, 537 S.W.3d at 587, 596; *see also Positive Feed, Inc. v. Wendt*, No. 01-96-00614-CV, 1998 WL 43321, at *10 (Tex. App.—Houston [1st Dist.] Feb. 5, 1998, pet. denied) (mem. op.) (holding that the "loss of enjoyment or the reasonable use of one's home can be an irreparable injury for purposes of injunctive relief").

Morris did not file a response or submit any evidence to controvert the City's summary judgment evidence. As such, and even when we view the evidence in the light most favorable to Morris, we conclude that no genuine issue of material fact exists as to Morris's violations of the Midland Municipal Code sections referred to in the permanent injunction. Therefore, the trial court did not err when it granted the City's motion. *KMS Retail Rowlett*, 593 S.W.3d at 181.

Accordingly, we overrule Morris's fourth and sixth issues.

F. *Contempt of Court*

In her seventh issue, Morris contends that the trial court abused its discretion when it issued its contempt findings and signed its contempt orders. A court of

appeals lacks jurisdiction to review a contempt order by direct appeal. *Tex. Animal Health Comm'n v. Nunley*, 647 S.W.2d 951, 952 (Tex. 1983); *Tracy v. Tracy*, 219 S.W.3d 527, 530 (Tex. App.—Dallas 2007, no pet.). Contempt orders that do not involve confinement may be reviewed via a petition for writ of mandamus. *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020); *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999); *Tracy*, 219 S.W.3d at 530; *Adams v. Bell*, 94 S.W.3d 759, 762 (Tex. App.—Eastland 2002, no pet.). Here, Morris directly appealed the trial court's contempt orders, none of which involved a finding of confinement. Because we lack jurisdiction to review this complaint, we do not address Morris's seventh issue.

IV. *This Court's Ruling*

We affirm the judgments of the trial court.


W. STACY TROTTER

JUSTICE


November 30, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[5]

Williams, J., not participating.

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.